# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Lieutenant Colonel KENNETH A.R. PINKELA**
**United States Army, Appellant**

ARMY 20120649

Headquarters, U.S. Army Military District of Washington
Denise R. Lind and Michael J. Hargis, Military Judges
Lieutenant Colonel Brian A. Hughes, Acting Staff Judge Advocate (pretrial)
Colonel Corey L. Bradley, Staff Judge Advocate (post-trial)

For Appellant: Philip D. Cave, Esquire; Major Aaron R. Inkenbrandt, JA (on brief).

For Appellee: Major A.G. Courie III, JA; Major John Choike, JA; Captain Scott L. Goble, JA (on brief).

11 June 2015

--------------------------------
SUMMARY DISPOSITION
--------------------------------

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of willful disobedience of a superior commissioned officer, one specification of abusive sexual contact, one specification of aggravated assault, one specification of conduct unbecoming an officer, and one specification of reckless endangerment in violation of Articles 90, 120, 128, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 920, 928, 933, 934 (2006) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dismissal and confinement for one year.

On 14 November 2014, we affirmed the findings and sentence in this case in a summary disposition. *United States v. Pinkela*, ARMY 20120649, 2014 CCA LEXIS 852 (Army Ct. Crim. App. 14 Nov. 2014) (summ. disp.). On 22 April 2015, the Court of Appeals for the Armed Forces granted appellant's petition for review and summarily vacated our earlier decision. *United States v. Pinkela*, __ M.J. ___ (C.A.A.F. April 22, 2015) (summ. disp.). Our superior court returned the record of

trial to this court for reconsideration in light of *United States v. Gutierrez*, 74 M.J. 61 (C.A.A.F. 2015).

As a result, this case is again before us for review pursuant to Article 66, UCMJ. Appellant renews his argument that the evidence is legally and factually insufficient to sustain his conviction for assault with a means likely to produce death or grievous bodily harm. After reviewing the entire record in light of our superior court's holding in *Gutierrez*, we are convinced appellant's conviction is legally and factually sufficient. Appellant's other assignments of error do not warrant relief.[1]

We recounted the relevant factual background in our earlier decision. *Pinkela*, 2014 CCA LEXIS at *3-*5.[2] The crux of the issue here is whether appellant's engaging in unprotected anal intercourse while HIV-positive constitutes a means likely to produce death or grievous bodily harm, as contemplated by Article 128, UCMJ.

In *Gutierrez*, also an aggravated assault case involving sexual activity while HIV-positive, our superior court stated "[t]he critical question . . . is whether exposure to the risk of HIV transmission is 'likely' to produce death or grievous bodily harm." 74 M.J. at 65. "It must be correct that [t]here is only one standard: Whether the means used [in the assault] were likely to produce death or grievous bodily harm." *Id.* at 66 (quoting *United States v. Outhier*, 45 M.J. 326, 328 (C.A.A.F. 1996)) (internal quotation marks removed). "The ultimate standard, however, remains whether – in plain English – the charged conduct was 'likely' to bring about grievous bodily harm. As related to this case, the question is: was grievous bodily harm the likely consequence of Appellant's sexual activity?" *Id.*

Our superior court held the evidence was legally insufficient to support aggravated assault convictions in *Gutierrez*. The conduct in that case involved two types of sexual behavior: 1) oral sex without using a condom and 2) vaginal sex using a condom while appellant was HIV-positive. *Id.* at 66-67. The expert testimony about the risk of HIV transmission during oral sex was "almost zero." *Id.* at 66. The expert testimony about the HIV transmission risk for vaginal sex was only "remotely possible," that condoms were effective 97% to 98% of the time, and that the maximal risk of infection was 1-in-500. *Id.* at 66-67.

---

[1] Appellant's personal submissions made pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), do not warrant relief.

[2] Appellant correctly notes the background section in our first decision mentioned the victim in this case, First Lieutenant (1LT) CH, tested positive for the HIV virus. We do not consider that fact in rendering this decision. Although we might infer 1LT CH's HIV status from chat logs admitted into evidence, we do not make that inference here.

The evidentiary posture of this case is quite different than that in *Gutierrez*. An expert testified in this case that "infectivity has to do with things like viral load, whether they have open sores, [and] the type of sex in which they're engaged." Appellant had a "pretty significant" viral load and did not use a condom. First Lieutenant CH also testified that his anus was bleeding as a result of appellant sexually assaulting him with a "shower shot" enema into his anus in preparation for intercourse.[3] Appellant and 1LT CH also engaged in anal intercourse, distinct from the sexual behavior in *Gutierrez*. Given these facts, we distinguish appellant's conduct from the conduct in *Gutierrez*. We have made our "own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt," *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002), and are convinced it does meet that standard.

## CONCLUSION

On consideration of the entire record, the matters submitted pursuant to *Grostefon*, and the assigned errors, the findings and sentence as approved by the convening authority are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[3] Other expert testimony indicated that the meta-analysis of several different studies indicated a per act rate of transmission of 1.4% for HIV. While this evidence cuts toward a finding that HIV transmission is not likely from a single sex act, it is not dispositive for the sex act in this case, which involved the aggravating factors listed above.